UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------------x

**FILED**
**CLERK**

4:07 pm, Feb 27, 2017

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

THOMAS GESUALDI, LOUIS BISIGNANO, ANTHONY D'AQUILA, MICHAEL O'TOOLE, BENNY UMBRA, JOSEPH A. FERRARA, SR., FRANK H. FINKEL, MARC HERBST, DENISE RICHARDSON, and THOMAS F. CORBETT as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund,

Plaintiffs,

-against-

J.H. REID, GENERAL CONTRACTOR,

Defendant.
----------------------------------------------------------------------------------x

Decision and Order
14-cv-4212(ADS)(GRB)

APPEARANCES:

**Trivella & Forte LLP**
*Attorneys for the Plaintiffs*
1311 Mamaroneck Ave., Suite 170
White Plains, NY 10605
    By:    Gina E. Nicotera, Esq.
              Jonathan M. Bardavid, Esq., Of Counsel

**Tobia & Sorger, LLC**
*Attorneys for the Defendant*
500 Supor Blvd.
Harrison, NJ 07029
    By:    Ronald L. Tobia, Esq., Of Counsel

**SPATT, District Judge:**

On August 2, 2016, pursuant to an Order of this Court, a default judgment was entered against the Defendant J.H. Reid, General Contractor (the "Defendant"), and this case was closed.

Approximately two weeks later, on August 18, 2016, the Defendant filed a motion for relief from that judgment under Federal Rules of Civil Procedure ("FED. R. CIV. P.") 55(c) and 60(b)(1).

For the reasons that follow, the Defendant's motion is denied in its entirety.

1

# I. BACKGROUND

## A. Relevant Procedural History

The procedural history of this case has been set forth in detail in prior Orders. Nevertheless, given the nature of the relief sought, the Court finds that it will be useful to recount the course of events that have led to this point.

### 1. The Events Prior to Defense Counsel's Appearance

On July 9, 2014, the Plaintiffs Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Benny Umbra, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise Richardson, and Thomas F. Corbett, in their capacity as the trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Plaintiffs") filed a complaint alleging that the Defendant violated Section 502(g)(2) of the Employee Retirement Income Security Act of 1974, as amended, and Section 301 of the Labor Management Relations Act of 1947 by failing to make fringe benefit contributions in accordance with the terms of a collective bargaining agreement. The Plaintiffs sought damages under the statutes and the agreement, including the unpaid contributions, prejudgment interest, liquidated damages, attorneys' fees and litigation costs.

The Defendant was personally served with process on July 22, 2014, but did not file an answer or otherwise respond to the complaint.

On August 11, 2014, the Plaintiffs filed an amended complaint as of right, which added a cause of action for injunctive relief, namely, an order compelling the Defendant to submit its books and records for an audit and to pay any amounts that an audit may reveal to be due, together with related damages.

On August 13, 2014, the Plaintiffs served the amended complaint by mailing it to the Defendant's corporate address. The Defendant does not deny receiving the amended complaint.

On September 2, 2014, after the Defendant failed to answer or otherwise respond to the amended complaint, the Plaintiffs requested that the Clerk of the Court note the Defendant's default. The Plaintiffs served a copy of this request by mailing it to the Defendant's corporate address. Again the Defendant does not deny receiving this notice.

The following day, on September 3, 2014, the Clerk of the Court noted the Defendant's default.

On October 14, 2014, the Plaintiffs filed a motion for a default judgment. That same day, copies of the motion and supporting papers were served on the Defendant by first-class mail and UPS next-day delivery. On October 16, 2014, the Court referred the motion for a default judgment to United States Magistrate Judge Gary R. Brown.

Between October 16, 2014 and August 12, 2015, the Defendant did not respond to the motion for a default judgment.

On August 12, 2015, Judge Brown issued a Report and Recommendation (the "First R&R"), recommending that the Court deny without prejudice the motion for a default judgment. In particular, Judge Brown noted that, under FED. R. CIV. P. 5(a)(2), a pleading that asserts a new claim for relief against a party who is in default must be personally served on that party in accordance with Rule 4. Therefore, Judge Brown concluded that, to the extent that the amended complaint added a claim for injunctive relief; and because the amended complaint had served by mail rather than personally served, the Plaintiffs had not satisfied the procedural prerequisites for entitlement to a default judgment.

On September 16, 2015, the Court adopted the First R&R to the extent that it recommended denial without prejudice of the Plaintiffs' motion for a default judgment. However, the Court found that good cause had been shown to extend, *nunc pro tunc*, the time for service of the amended complaint until August 17, 2015, and declined to vacate the Clerk's entry of default.

In reaching this conclusion, the Court reasoned that:

> [T]he Defendant received notice of this action, and the facts upon which it is premised, as early as July 9, 2014, when the original complaint was properly served upon it. The amended complaint added forms of relief, but did not materially alter the facts giving rise to the lawsuit.
>
> Nevertheless, in response to the complaint, the Defendant failed to appear or take any steps to defend the claims against it. Thereafter, on August 11, 2014, the Plaintiffs mailed a copy of the amended complaint to the Defendant's corporate address. Although this mailing does not suffice as proper service under the Federal Rules, there is a strong probability that it resulted in the Defendant receiving notice that a second complaint had been filed against it. The Defendant took no action in response to this mailing, or to the Clerk's Notice of Default on September 3, 2014 and the mailing of the Plaintiffs' motion for a default judgment on October 14, 2014. Accordingly, it does not appear that the Defendant will suffer any prejudice by this *nunc pro tunc* extension.
>
> In addition, the Plaintiffs acted promptly upon learning of the error, and properly served the amended complaint upon the Defendant within one week of the issuance of Judge Brown's R&R. *See PH Int'l Trading Corp. v. Nordstrom, Inc.*, 07-cv-10680, 2009 U.S. Dist. LEXIS 27110, at *18-*19 (S.D.N.Y. Mar. 31, 2009) (granting application to extend the time for service under analogous provision of New York law where, as here, the plaintiff served the relevant documents upon the defendant "within weeks of discovering that it had not been served"). Accordingly, the Court finds that an extension of the time to serve the amended complaint is warranted.
>
> Furthermore, because the Court deems the Plaintiffs' August 17, 2015 service timely, the Defendant had until September 7, 2015 to answer or otherwise respond to the pleading. *See* FED. R. CIV. P. 12(a). Having failed to do so, the Court finds that the Defendant is in default. *See Kondaur Capital Corp. v. Cajuste*, 849 F. Supp. 2d 363 (E.D.N.Y. 2012) ("Even if the defendant is served pursuant to a state law method of service [*e.g.*, service upon the New York Secretary of State] . . . , the Second Circuit has established that 'under the plain terms of Federal Rule of Civil Procure 12(a), a defendant has twenty [now twenty-one] days from receipt of the summons to file an answer unless a federal statute provides otherwise' " (quoting *Beller & Keller v. Tyler*, 120 F.3d 21, 25-26 (2d Cir. 1997)). Therefore, the Clerk's entry of default, although originally issued upon a flawed premise, need not be vacated at this time.

Docket Entry [26], at 7-8.

The Court granted the Plaintiffs leave to renew their motion for a default judgment within thirty days of the date of that Order. On September 24, 2015, the Plaintiffs mailed a copy of the Court's September 16, 2015 Order to the Defendant, and the Defendant does not deny receiving it.

Thereafter, consistent with the Court's directives, on September 23, 2015, the Plaintiffs filed a renewed motion for a default judgment, which was again referred to Magistrate Judge Brown. On September 25, 2015, copies of the renewed motion and supporting papers were served on the Defendant by UPS next-day delivery.

## 2. The Events Following Defense Counsel's Appearance

On October 15, 2015, while the renewed motion for a default judgment was on submission, the law firm of Tobia & Sorger, LLC, by attorney Ronald L. Tobia, Esq., filed a notice of appearance on behalf of the Defendant.

However, between October 15, 2015 and June 29, 2016, Mr. Tobia did not seek to vacate the Certificate of Default entered against the Defendant; failed to interpose an answer or other response to the complaint; and failed even to oppose the motion for entry of a default judgment. In fact, during this eight-month period, Mr. Tobia took no discernible action with respect to this case.

Thus, on June 29, 2016, Judge Brown issued a second Report and Recommendation (the "Second R&R"), recommending that: (i) the Plaintiffs' motion for entry of a default judgment be granted; (ii) damages in the total amount of $1,030,265.28, representing unpaid contributions, accrued interest, liquidated damages, attorneys' fees, and costs, be awarded to the Plaintiffs; (iii) continuing *per diem* interest at the rate of $291.74, from October 1, 2014 until judgment is entered, also be awarded; and (iv) the portion of the motion seeking injunctive relief be denied.

In relevant part, the Second R&R stated that:

> Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.** *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *Caindor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Docket Entry [36], at 18 (emphasis in original).

On June 30, 2016, the Plaintiffs served copies of the Second R&R, via UPS next-day delivery, on the Defendant at its corporate address and to Mr. Tobia at his law firm.

5

On July 13, 2016, one day before the expiration of the deadline for filing objections, Mr. Tobia filed a letter motion requesting a four-week extension of time to object to the Second R&R. In his letter motion, Mr. Tobia identified two reasons why additional time was necessary: (1) despite entering an appearance in this case nine months earlier, his law office was still in the process of "review[ing] the issues in this matter"; and (2) although the two-week objections period had nearly lapsed, an associate at the firm, namely, Michael A. DeMarco, Esq., who was apparently assisting Mr. Tobia on this case, was scheduled to be married *the following weekend* (July 16, 2016-July 17, 2016) and would be away on his honeymoon until August 2016.

On July 14, 2016, the Court granted in part and denied in part Mr. Tobia's request, stating that:

> The Defendant has already had two weeks to file objections to Judge Brown's R&R, and the Court finds that an additional four-week extension is not warranted under the circumstances. A modest and <u>final</u> two-week extension, until 7/28/16, is granted.

(underscore supplied).

Defense counsel received service of this Order via ECF that same day. Nevertheless, the extended deadline to file objections, namely, July 28, 2016, passed without any party filing a timely objection to the Second R&R.

On July 29, 2016, despite the Court's indication that the two-week extension previously granted to the Defendant had been "final," Mr. Tobia filed a second letter motion seeking a further extension of time to file objections to the Second R&R. This time, Mr. Tobia stated that additional time was needed, as he had been ill, and Mr. DeMarco was still on his honeymoon.

By Order dated July 29, 2016, the Court denied Mr. Tobia's untimely request for a second extension of time to file objections; adopted Magistrate Judge Brown's Second R&R in its entirety; and directed the Clerk of the Court to enter judgment in favor of the Plaintiffs and close the case.

As noted above, approximately two weeks after the case was closed, the Defendant filed a motion seeking to vacate the default judgment.

II.     DISCUSSION

A.    The Standard of Review

Under FED. R. CIV. P. 60(b)(1), the Court may relieve a party from a final judgment based on a showing of excusable neglect. In deciding whether to grant relief under this section, "the court's determination must be guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir. 2004) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)).

However, "[o]f these three criteria, 'willfulness is preeminent, and a willful default will not normally be set aside.'" *Arista Records, Inc. v. Musemeci*, No. 03-cv-4465, 2007 U.S. Dist. LEXIS 81630, at *12 (E.D.N.Y. Sept. 19, 2007) (quoting *MacEwen Petroleum, Inc. v. Tarbell*, 173 F.R.D. 36, 39 (N.D.N.Y. 1997)); *see Hernandez v. La Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007) (notwithstanding the other factors, "a default judgment should not be vacated if the default was willful"); *Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 07-cv-2376, 2011 U.S. Dist. LEXIS 76716, at *8 (E.D.N.Y. July 12, 2011) ("If a default is determined to be willful, that fact alone can justify denying a motion to vacate a default judgment").

Ultimately, the decision to vacate a final judgment is within the sound discretion of the Court and will not be disturbed except to correct an abuse of discretion. *See State St. Bank & Tr. Co.*, 374 F.3d at 166.

B.    The Defendant's Default Was Willful, Precluding a Finding of Excusable Neglect

1.    The Applicable Legal Principles

"In the context of a motion to vacate a default judgment, '"excusable neglect" is to be construed generously,'" and the willfulness standard "should not be interpreted to include careless

or negligent errors," which "can appropriately be considered excusable." *Am. Arbitration Ass'n v. Defonseca*, No. 93-cv-2424, 1997 U.S. Dist. LEXIS 2433, at *3 (S.D.N.Y. Mar. 6, 1997) (quoting *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 58, 61 (2d Cir. 1996)).

Rather, the Second Circuit has interpreted "willfulness" "to refer to conduct that is more than merely negligent or careless," *McNulty*, 137 F.3d at 738, and " 'will look for bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error,' " *Yan v. Bocar*, No. 04-cv-4194, 2005 U.S. Dist. LEXIS 28390, at *39 (S.D.N.Y. Sept. 8, 2005) (Report and Recommendation), *adopted*, 2005 U.S. Dist. LEXIS 28387 (S.D.N.Y. Sept. 30, 2005); *see Hernandez*, 538 F. Supp. 2d at 532 (noting that "[t]he willfulness standard encompasses conduct that is deliberate or egregious or is carried out in bad faith"); *King v. Galluzzo Equip. & Excavating, Inc.*, 223 F.R.D. 94, 97 (E.D.N.Y. 2004) ("The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable").

For example, "[a] default is deemed willful where a defendant simply ignores the complaint without action." *Circuito Cerrado, Inc. v. LV Foods, Inc.*, 296 F.R.D. 122, 126 (E.D.N.Y. 2013) (quoting *Arista Records, Inc.*, 2007 U.S. Dist. LEXIS 81630, at *12). "Thus, 'where a party is notified that he is in default and he apparently makes no effort to appear *pro se* or to explain his situation to the court, such neglect is inexcusable.' " *Arista Records, Inc.*, 2007 U.S. Dist. LEXIS 81630, at *13 (quoting *Yan*, 2005 U.S. Dist. LEXIS 28390, at *39-*40); *cf. Kauhsen v. Aventura Motors, Inc.*, No. 09-cv-4114, 2010 U.S. Dist. LEXIS 55554, at *13 (E.D.N.Y. June 7, 2010) (noting that "[w]illfulness includes conduct that is 'not satisfactorily explained' " (quoting *McNulty*, 137 F.3d at 738)); *Domond v. Great Am. Rec., Inc.*, 116 F. Supp. 2d 368, 374 (E.D.N.Y. 2000) (Spatt, J.) (noting that "willfulness may be inferred where a party's conduct was egregious and not adequately explained"); *Frost Belt Int'l Recording Enters., Inc. v.*

8

*Cold Chillin' Records*, 758 F. Supp. 131, 136 (S.D.N.Y. 1990) ("[U]tter failure to explain the default effectively precludes a finding of excusable neglect").

In general, no exception is made for neglectful conduct that is attributable to an attorney. On the contrary, the Second Circuit has "consistently declined to relieve a client under subsection (1) of the 'burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload.' " *Nemaizer*, 793 F.2d at 62 (collecting cases).

In this regard, "[a]lthough the court may consider [a] counsel's illness, regardless of its seriousness, illness alone is not a sufficient basis for setting aside a judgment under Rule 60(b)(1)." *Carcello v. TJX Cos.*, 192 F.R.D. 61, 64 (D. Conn. 2000) (citing *Andree v. Ctr. for Alternative Sentencing and Employment Servs., Inc.*, No. 92-cv-616, 1993 U.S. Dist. LEXIS 12697, at *4-*6 (S.D.N.Y. Sept. 14, 1993)); *see Lehr Constr. Corp. v. Flaxer*, No. 16-cv-4048, 2017 U.S. Dist. LEXIS 15047, at *12-*13 (S.D.N.Y. Feb. 2, 2017) (noting, as a general matter, that "[i]llness or disability alone does not constitute excusable neglect," and explaining that, "[w]hile courts will occasionally rely on the illness or disability of a party or attorney when finding excusable neglect, these cases involve extraordinary circumstances, such as a sudden, unexpected, or catastrophic illness, or the party has pointed to specific facts and circumstances demonstrating why the illness or disability caused them to miss the original deadline"); *Epps v. City of Schenectady*, No. 10-cv-1101, 2013 U.S. Dist. LEXIS 116083, at *8-*9 (N.D.N.Y. Aug. 16, 2013) (noting that an attorney's illness only provides grounds for excusable neglect where the illness is shown to be "so physically and mentally disabling that counsel is unable to file [required documents] and is not reasonably capable of communicating to co-counsel his inability to file" (internal quotation marks and citation omitted)); *see also Carcello*, 192 F.R.D. at 65 (noting that the Rules of Professional Conduct "make it clear that if an illness interferes or potentially interferes with counsel's competence, diligence, and effective representation of a client, the prudent and

professionally responsible attorney must make alternative arrangements for his clients and withdraw from their representation until such time as he is able to provide competent, diligent, and effective representation")

This is particularly true when the attorney claiming to have been ill for Rule 60(b) purposes failed during the course of the litigation to sufficiently communicate with opposing counsel or the Court regarding the serious nature of his medical condition, or to avail himself of procedural safeguards designed to afford litigants and their counsel reasonable extensions of time and other leniencies. *See Carcello*, 192 F.R.D. at 64; *Long v. Carberry*, 151 F.R.D. 240, 243 (S.D.N.Y. 1993) (with regard to counsel's argument regarding illness, reasoning that, "[r]ather than showing excusable neglect, [ ] plaintiff ha[d] demonstrated that his lawyer either made a tactical decision not to file responsive papers or was ignorant of the procedural rules governing extensions of time in the federal courts"; either way, "plaintiff [was] not entitled to relief under Rule 60(b)(1)"); *see also Martin v. Giordano*, 185 F. Supp. 3d 339, 364 (E.D.N.Y. 2016) (observing that, if the attorney in fact "suffered from a physical or mental condition that impaired his ability to represent his client and comply with court orders, it was incumbent upon him to provide prompt and appropriate notification and, if necessary, to withdraw his representation").

Even more so, an attorney's claims of illness will not justify relief from a default judgment if the lawyer was actually engaged in other facets of the case during the same time period. *See Lehr Constr. Corp.*, 2017 U.S. Dist. LEXIS 15047, at *13 (claims of illness were insufficient to justify excusable neglect where, during the same time that an attorney claimed to be disabled, he filed a different motion in the case); *Epps*, 2013 U.S. Dist. LEXIS 116083, at *9-*10 (in the same context, the allegedly disabled lawyer filed a letter and traveled to the courthouse to inquire about a court ruling without ever mentioning his illness).

Relevant here, this necessarily includes engaging in settlement discussions rather than taking affirmative actions to avoid a default judgment. *See United States v. Cejas*, No. 03-cv-1720, 2005 U.S. Dist. LEXIS 1462, at *3–*4 (D. Conn. Feb. 3, 2005) (rejecting a theory of excusable neglect where, rather than claim that their failure to appear was due to inadvertence or mistake, the defendants "acknowledged that they were aware of the claim against them and had entered into unsuccessful settlement negotiations with the plaintiff"; reasoning that "[a]lthough there is no bad faith apparent in the decision not to defend this suit in court, defendants acknowledge a conscious decision not to file an appearance or answer . . . In these circumstances, defendants' conduct must be deemed willful" (internal citation omitted)); *see also ARA Servs., Inc. v. Olympia Vending & Amusement Corp.*, No. 88-cv-794, 1990 U.S. Dist. LEXIS 3578, at *5–*6 (S.D.N.Y. Apr. 4, 1990) (noting that "settlement negotiations alone do not excuse a defendant's failure to answer within the prescribed time"); *Richardson Greenshields Secs., Inc. v. Int'l Petroleum Corp.*, No. 84-cv-2680, 1985 U.S. Dist. LEXIS 20974, at *10 (S.D.N.Y. Apr. 8, 1985) (holding that "[a] party cannot make a strategic decision to ignore an action in order to engage in settlement negotiations" – "neither impecuniosity nor an avowed preference for settling a dispute, relieves a party from answering or otherwise defending an action").

This also remains true when, due to inconsistent explanations, the credibility of the attorney's alleged medical condition is called into question. *See Carcello*, 192 F.R.D. at 64 (reasoning that, although the plaintiff offered his counsel's illness as a basis for Rule 60(b) relief, he previously cited different reasons for his attorney's failings; the court found these "inconsistent explanations" "troubling and [sufficient to] cast doubt upon counsel's credibility"); *cf. United States v. Chesir*, 862 F. Supp. 2d 286, 291 (E.D.N.Y. 2012) ("*post hoc* rationalization" based on defendant's illness was incapable of establishing excusable neglect).

"The reason behind this seemingly harsh rule is that generally, 'the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.' " *Alvarado*, 2003 U.S. Dist. LEXIS 19339, at *8 (quoting *Aalmuhammed v. Kesten*, No. 98-cv-171, 2003 U.S. Dist. LEXIS 415, at *14 (S.D.N.Y. Jan. 14, 2003)).

Even so, counseled litigants themselves have a burden to act with diligence. *See Aalmuhammed*, 2003 U.S. Dist. LEXIS 415, at *15 ("Even where an attorney has inexcusably and completely abandoned his responsibilities to his client, [ ] a party must still demonstrate his own diligent efforts to induce the attorney 'to fulfill his duty' " (quoting *Dominguez v. United States*, 583 F.2d 615, 618 (2d Cir. 1978)). In this regard, the Second Circuit has explained that:

> where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted "excusable neglect." *See Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir. 1971) (per curiam); *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2858, at 288-89 (2d ed. 1995) ("Insufficient showings for relief [under Rule 60(b)(1)] . . . include when the party or attorney did not act diligently"); 12 James Wm. Moore *et al.*, *Moore's Federal Practice* § 60.41[1][c][ii], at 60-90 (3d ed. 1997) ("Courts repeatedly deny relief [pursuant to 60(b)(1)] when they find that the facts and circumstance[s] demonstrate a lack of diligence in pursuing or defending litigation."). *Cf. Ramseur v. Beyer*, 921 F.2d 504, 506 (3d Cir. 1990) (recognizing that a court must be satisfied that attorneys acted with substantial diligence before finding "excusable neglect"). Hence, when a party demonstrates a lack of diligence in defending a lawsuit, a court need not set aside a default judgment. *See Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993) (per curiam).

*State St. Bank & Tr. Co.*, 374 F.3d at 177.

With this legal framework in mind, the Court now turns to the parties' substantive contentions.

### 2. Application to the Facts of this Case

In this case, the Defendant argues that its default was due to excusable neglect, and was therefore not willful, for two reasons.

First, the Defendant contends that, at an unspecified time at or about the "time that Plaintiffs served . . . their Complaint and their Amended Complaint," the Executive Vice President of the corporate Defendant, who "had intimate knowledge of the facts surrounding the instant matter" retired, resulting in the Defendant "neglect[ing] to notify its counsel of this matter until after a default was entered." *See* Def. Memo of Law at 1, 4-5. In the Court's view, this argument is patently insufficient to warrant the relief sought.

Initially, the alleged facts giving rise to this explanation are asserted only by counsel in a legal memorandum, and are not supported by an affidavit of anyone associated with the corporate Defendant or any other pertinent evidence.

Nevertheless, even if the Court were inclined to accept this explanation based on counsel's word alone, the Defendant's argument omits material facts that preclude recovery. For example, the record is lacking any indication of when the Defendant's Executive Vice President retired and specific reasons why his or her retirement caused the corporate Defendant to fail for more than a year to take any action in this case. Although the Defendant states that this officer's retirement occurred "[d]uring time that Plaintiffs served . . . their Complaint and their Amended Complaint," this explanation fails to appropriately account for the fact that, between July 22, 2014 and September 25, 2015 – a period of fourteen months – the Defendant was served with no less than seven sets of papers, including the Plaintiffs' request for a Certificate of Default; the Plaintiffs' initial motion for a default judgment; Judge Brown's First R&R; this Court's Order partially adopting the First R&R; and the Plaintiffs' renewed motion for a default judgment. As noted, the Defendant does not deny that it actually received all of these filings but failed to take any responsive action.

Thus, under these circumstances, and based solely on counsel's unsupported argument, the Court is unable to conclude that the retirement of an unidentified corporate officer, at or about the time the original complaint was filed, is a satisfactory reason to excuse the Defendant's failure for more than a year to do anything with regard to this case, even after being notified of its default.

This is particularly true since the Defendant has failed to identify even a single legal authority in support of its position. Rather, as discussed above, the caselaw of which the Court is aware seems to strongly reject the premise that internal mismanagement constitutes the type of excusable error that justifies relief under Rule 60(b)(1). On the contrary, as set forth in detail above, where, as here, " 'a party is notified that he is in default and he apparently makes no effort to appear *pro se* or to explain his situation to the court, such neglect is inexcusable.' " *Arista Records, Inc.*, 2007 U.S. Dist. LEXIS 81630, at *13; *see King*, 223 F.R.D. at 97 (noting that "[t]he boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable").

Further, in this case, there is no evidence tending to show that the Defendant acted with the requisite diligence to warrant relief from the default judgment, and the conclusory explanation that the retirement of a single officer resulted in the Defendant's prolonged period of indolence is insufficient to warrant a different result. *See State St. Bank & Tr. Co.*, 374 F.3d at 177 ("[W]here a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted 'excusable neglect' ").

The Defendant's alternative explanation – which shifts the focus from the corporate Defendant to its lawyer – fares no better. In particular, the Defendant contends that, after retaining Mr. Tobia in October 2015, a serious illness prevented him from timely objecting to the Second R&R, and thus averting the entry of a default judgment.

In a supporting declaration, which neither attached relevant medical evidence nor included a diagnosis, Mr. Tobia stated only that, at or about the same time that Judge Brown issued the Second R&R, namely, June 29, 2016, he "was dealing with a chronic health condition flare-up," the treatment for which "required [his] absence and complete bed rest." *See* Aug. 18, 2016 Declaration of Ronald L. Tobia ("Tobia Decl."), DE [42-2], at ¶ 14. In this regard, although his affidavit offers to

14

supply a physician's note "to establish [his] incapacity," *id.*, the record otherwise fails to set forth any details that would allow the Court to conclude that Mr. Tobia's alleged illness constitutes excusable neglect for purposes of Rule 60(b)(1).

First, as discussed above, even assuming the truth of Mr. Tobia's assertions regarding his illness, it is well-settled that illness alone is not a sufficient basis for setting aside a judgment under Rule 60(b)(1). S*ee*, *e.g.*, *Carcello*, 192 F.R.D. at 64. That is to say nothing of the fact that, due to Mr. Tobia's failure to set forth any specific details concerning his condition; the timing of his alleged flare-up; or particularized reasons other than a general need for "bed rest" why he or other attorneys at his law firm were prevented from taking any steps whatsoever to avert a default judgment, the Court cannot determine that Mr. Tobia's illness was "so physically and mentally disabling" that he was unable to adequately represent the Defendant's interests. *See Epps*, 2013 U.S. Dist. LEXIS 116083, at *8-*9.

In any event, assuming that an attorney's illness may constitute a proper basis for Rule 60(b)(1) relief; and further assuming that Mr. Tobia adequately detailed and supported his alleged incapacity; the fact that his illness worsened at approximately the same time that objections were due to the Second R&R nevertheless fails to account for the eight-month period between October 15, 2015 and June 29, 2016, during which he neglected to take any action to vacate the Clerk's Certificate of Default; to interpose an answer or other response to the complaint; or, most importantly, to seek leave to oppose the motion for entry of a default judgment. Contrary to his current assertions, the Court finds that Mr. Tobia inexcusably took no discernible action to avoid the entry of a default judgment during this time.

Further, again, drawing every inference in the Defendant's favor, Mr. Tobia's health-based explanation simply is not an adequate excuse. In this regard, as the Court already noted, the existence of excusable neglect is more unlikely where, due to inconsistent explanations, the credibility of the attorney's alleged medical condition is called into question. *See Carcello*, 192 F.R.D.

at 64. Here, as noted, for eight months between October 2015 and June 2016, Mr. Tobia did not bring his alleged medical condition to the Court's attention as a reason for failing to take any identifiable action in this case.

Nor did Mr. Tobia raise his medical condition as a basis for seeking a four-week extension of time to object to the Second R&R after the original two-week objections period had nearly lapsed.

Rather, importantly, Mr. Tobia identified two *different* reasons why additional time was necessary – namely, that his law office was still "review[ing] the issues in this matter," and that an associate at the firm who was working on this case was scheduled to be married the following weekend. In the Court's view, Mr. Tobia's failure to assert his medical condition at the time he now claims he was seriously ill raises questions about the reliability of his current position. Indeed, it was not until Mr. Tobia filed a second, untimely request for an extension of time to object to the Second R&R that he stated for the first time that he had "been out of the office ill." Even then, he again cited the extended honeymoon of his associate Michael DeMarco as a basis for his inability to file objections.

In this regard, the Court is also troubled by Mr. Tobia's assertion in his sworn affidavit that he is "the only attorney handling this matter from [his] law firm," *see* Tobia Decl. ¶ 3, which obviously contradicts his prior assertions, made in letter motions filed on July 13, 2016 and July 29, 2016, regarding the impact of attorney DeMarco's absence on the firm's ability to timely object to the Second R&R.

Finally, the Court finds that Mr. Tobia's alleged illness does not constitute excusable neglect because, during the prolonged period of time during which Mr. Tobia failed to take any action to forestall the entry of a default judgment, he concedes that he was engaged in negotiations to settle this matter out of Court. *See* Tobia Decl. ¶ 11 ("During this lengthy interim between filing my notice of appearance and the issuance of the [Second R&R] . . . Counsel for Plaintiffs and I had numerous conferences concerning settlement and resolving this matter on terms that were both acceptable and

feasible for Defendant"); *id.* ¶ 12 (conceding that settlement negotiations were ongoing during the period to file objections to the Second R&R); *id.* ¶ 18 (noting that the Defendant "directed [Mr. Tobia] to conserve legal expenses during settlement negotiations rather than directly defending this action through the Court"); *see also* Def. Memo of Law at 1 ("Once counsel for Defendant Reid was informed of this matter, it participated in settlement conferences in attempts to amicably resolve the matter without resorting to protracted litigation").

As discussed above, where, as here, the Defendant "acknowledge[s] a conscious decision not to file an appearance or answer," electing instead to "enter[ ] into unsuccessful settlement negotiations with the plaintiff" in an effort to conserve resources, the Defendant's conduct "must be deemed willful." *Cejas*, 2005 U.S. Dist. LEXIS 1462, at *3-*4; *see also ARA Servs., Inc.*, 1990 U.S. Dist. LEXIS 3578, at *5-*6; *Richardson Greenshields Secs., Inc.*, 1985 U.S. Dist. LEXIS 20974, at *10.

Accordingly, the Court finds that the Defendant's failure to defend this action was deliberate and willful, and not the result of an excusable error. Therefore, in its discretion, the Court finds that the Defendant has not sufficiently demonstrated its entitlement to relief from the default judgment under Rule 60(b)(1), and its current motion to vacate the default judgment is denied in its entirety.

### III. CONCLUSION

Based on the foregoing, the Court denies the Defendant's motion for relief from the default judgment under Rule 60(b)(1). This case shall remain closed.

It is **SO ORDERED.**

Dated: Central Islip, New York
February 27, 2017

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge